Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 9845 | DATE | 12/17/2002 |
| CASE TITLE | Norma Caratachea vs. Homewood Industries | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment and Defendant's Motion to Strike

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion, Defendant's Motion for Summary Judgment [#17] is granted. For the reasons given on the reverse of this Minute Order, Defendant's Motion to strike [#31] is granted in part and denied in part. Any and all other pending motions are moot and terminated. This case is closed.

(11) ■ [For further detail see the reverse side of the original minute order and the order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 1 8 2002 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 34 |
| | Copy to judge/magistrate judge. | | |
| | courtroom jar/lc deputy's initials | DEC 1 8 2002 date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# ORDER

Defendant has moved to strike the affidavits of Bianca Caratachea and Olga Alcanter, Paragraphs 106-114 and Paragraph 118 of Plaintiff's Additional Facts, and Exhibit 4 to Plaintiff's Response to the Motion for Summary Judgment. The objections to the affidavits stand on Federal Rule of Civil Procedure 37(c). The objections to the numbered paragraphs and Exhibit 4 stand primarily on hearsay grounds.

Defendant's objections to the affidavits of Bianca Caratachea (Plaintiff's daughter) and Olga Alcanter (Plaintiff's sister) are well-placed to the extent the objections rely upon the Federal Rules of Civil Procedure. Neither of these two witnesses was disclosed to Defendant during the discovery process. Attaching their affidavits to a response to summary judgment interposes new information after the close of discovery and defeats one of the primary purposes of the rules governing discovery: to avoid surprise. While it is better to attach the affidavits at the summary judgment stage than to attempt to call surprise witnesses at trial, both tactics run afoul of the Federal Rules. Plaintiff asserts, in her defense, that she mentioned the existence of both her daughter and her sister during her deposition. That does not satisfy the obligations of disclosure under the rules. Plaintiff's daughter and sister ought have been disclosed pursuant to Rule 26(a) or at least listed in response to an interrogatory requesting the identification of "every person with knowledge of the events that give rise to this lawsuit." (Def. Mot. Strike, Ex. A at 1)

The striking of the affidavits causes the Court to strike numbered paragraphs 106-109 and 111-114 of Plaintiff's statement of additional facts as well. Each of those paragraphs was only supported by material contained within the two affidavits.

Defendant's only objection to Paragraph 110 of Plaintiff's statement of additional facts is that Plaintiff did not include cites to the record in support of the allegations. While Plaintiff is reminded that Local Rule 56.1(b)(3)(B) requires the party opposing summary judgment to include citations to those portions of the record that support the facts, Defendant's objections to this paragraph are overruled. This is the only paragraph that lacks evidentiary citation, and it does not lack evidentiary support. Paragraph 110 was considered part of the record.

Defendant's objection to Exhibit 4 and Paragraph 118 is based on an application of the hearsay rules. Defendant overlooks that Plaintiff's Exhibit 4 was already part of the record, as Defendant submitted it as part of its materials in support of summary judgment (Ex. B, T. Lucas Dep., Ex. 3). Moreover, the Court does not need the parties to remind it of the Federal Rules of Evidence. Paragraph 118 and Exhibit 4 were considered on the motion for summary judgment only to the extent admissible under the evidentiary rules.

In summary, Defendant's Motion to Strike is granted as to the affidavits of Bianca Caratachea and Olga Alcanter and the paragraphs reliant upon those affidavits (¶¶ 106–09, 111–14). Defendant's Motion to Strike is denied as to Paragraphs 110, 118 and Plaintiff's Exhibit 4.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORMA CARATACHEA | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 01 C 9845 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| HOMEWOOD INDUSTRIES | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant Homewood Industries' Motion for Summary Judgment. For the reasons stated in this opinion, Defendant's motion is granted.

### Factual and Procedural Background

Defendant Homewood Industries ("Homewood" or "Defendant") is a small Illinois corporation that manufactures and installs kitchen cabinet components. Plaintiff Norma Caratachea ("Caratachea" or "Plaintiff") began working in the shipping and receiving department at Homewood in 1996. Caratachea left Homewood during 1997, but she returned to their roster of employees in 1998, again to work in the shipping and receiving department. She worked at Homewood from 1998 continuously until her termination on November 3, 2000.

During her tenure at Homewood, Plaintiff had two supervisors: Raymond Lucas and Thomas Lucas. Raymond Lucas was the owner and President of Homewood Industries from 1982-2000; he supervised Plaintiff from her initial hire in 1996 until his death on July 21, 2000. After Raymond Lucas' death, Thomas Lucas took over the supervisory duties. Defendant suggests that Thomas Lucas shared those duties with Sherry Lucas, Raymond Lucas' widow, but

1

the record demonstrates that Ms. Lucas did not supervise the shipping and receiving employees; that task fell to Thomas Lucas.

On November 3, 2000, Defendant terminated Plaintiff's employment. The proffered reasons for her termination were insubordination and disruption of production operations. On January 24, 2001, Plaintiff filed a charge of discrimination with the EEOC that included allegations of sexual harrassment and national origin discrimination. The EEOC issued a right to sue letter to Plaintiff on September 28, 2001. Plaintiff filed this lawsuit on December 21, 2001.

Plaintiff's amended complaint contains three counts: Count I alleges sexual harassment in the workplace; Count II alleges that her termination was motivated by national origin discrimination; and Count III alleges that her termination was in retaliation for complaints about sexual harrassment. Defendant now seeks summary judgment on all three counts.

## Summary Judgment Standard

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Mosher v. Dollar Tree Stores, Inc., 240 F.3d 662, 666 (7th Cir. 2001). When evaluating summary judgment motions, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. See Contreras v. Suncast Corp., 237 F.3d 756, 759 (7th Cir. 2001).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

2

such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). All three counts of Plaintiff's complaints arise under Title VII of the Civil Rights Act. Each will be evaluated in turn.

I.  **Plaintiff's Sexual Harassment Claim**

The prohibition against sex-based discrimination within Title VII has been construed to include a prohibition against sexual harassment. See Meritor Savings Bank v. Vinson, 477 U.S. 47, 64–67 (1986). To be actionable under Title VII, the behavior complained of must have been sufficiently severe to constitute an alteration of the terms, conditions, or privileges of employment. Farragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[T]he conduct must be extreme to amount to a change in the terms and conditions of employment . . . ."). When evaluating a sexual harassment claim, the Seventh Circuit has described a line between mildly offensive boorish conduct and deeply offensive harassing conduct. See Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430–31 (7th Cir. 1995); see also Carr v. Allison Gas Turbine Div., General Motors Corp., 32 F.3d 1007, 1010 (7th Cir. 1994) ("the line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing"). It is only the latter that qualifies as actionable sexual harassment.

To determine whether Plaintiff has established that Defendants conduct qualifies as sexual harassment, the Court must look at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc. 510 U.S. 17, 23 (1993). Upon an examination of those circumstances, the Court must determine that the workplace is both objectively and

3

subjectively hostile. "The work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such." Hostetler v. Quality Dining, Inc., 218 F.3d 798, 807 (7th Cir. 2000) (citing Farragher v. City of Boca Raton, 524 U.S. at 787).

In order to make this determination, the Court must review the evidence of harassment Plaintiff has brought forth. Plaintiff's complaints of sexual harassment relate to the conduct of four individuals: Ken Mihalik, Richard Star, Josh Terpstra, and Thomas Lucas. The Court will review the evidence relating to each of them separately, then it will consider the sum of the evidence supporting Plaintiff's claim.

### A. Ken Mihalik

Ken Mihalik worked in the Homewood plant as a measure technician from October 1999 through July 2001.[1] Plaintiff testified in her deposition that on one occasion in July 2000, Mr. Mihalik told her that he would love to touch her legs and she "look[ed] so good in shorts." (Pl. Dep. at 113) She never complained about this remark to her supervisor.

### B. Richard Star

Richard Star is an independent contractor who has provided consulting services to Homewood Industries since 1997. Plaintiff contends that after Ray Lucas' death until September 2000, Mr. Star would be at the factory two or three times a week. Each time he was at the plant, Plaintiff testified in her deposition that he would make some "stupid" remark to her such as

---

[1] Mr. Mihalik was an employee of CabinetPak, a separate corporate entity that works in the same physical location as Homewood Industries. Homewood Industries is the manufacturer of the product, CabinetPak is the retail outlet. (Sherry Lucas Dep. at 54) For the purposes of this opinion, the difference in employer is immaterial.

4

"Looking good today," "Good morning baby," or an approving "Hmm, hmm, hmm." (Pl. Dep. at 119-20) In response, Plaintiff would ignore him and "d[o] [her] work like [she] always did." (Pl. Dep. at 124) Plaintiff testified that she reported this conduct to one of her co-workers, but she never reported it to her supervisor.

During his deposition, Thomas Lucas testified that Richard Star was at the Homewood plant seventeen times during the year 2000, and that he was not physically present at the plant from the time of Ray Lucas' death in July 2000 until November 7, 2000. (Thomas Lucas Dep. at 60-61) The evidence Mr. Lucas presented about Mr. Star's business at the plant might reflect only those days where Mr. Star either submitted or received payment on an invoice. (Th. Lucas Dep. at 60) Defendant also submitted an affidavit from Mr. Star wherein he indicates that he "was not physically present at Homewood Industries at all between June 1, 2000 and November 6, 2000." (Star Aff. at ¶ 3) Sherry Lucas testified that Mr. Star came to Homewood irregularly, ranging from once a month to "two weeks in a row for one day." (Sherry Lucas Dep. at 40) With respect to Richard Star's alleged behavior, at this stage the actual frequency of his visits to the plant is immaterial.

C.   Joshua Terpstra

Joshua Terpstra worked in the production department at Homewood Industries. He began working there part-time in June 1999, but he had to leave in September to return to high school. After leaving high school, Mr. Terpstra returned to Homewood Industries as a full-time production employee in February 2000. When he returned to Homewood to work full time, he was seventeen years old.

Though the circumstances are disputed, the uncontroverted evidence shows that on one

5

occasion in August 2000, Mr. Terpstra asked Plaintiff if she would do a lap dance for him. Plaintiff contends that Mr. Terpstra made the request when the two were alone in the shipping area of Homewood where she worked. Mr. Terpstra maintains that the request was made in a playful group setting, where he was "just cracking a joke." (Terpstra Dep. at 13) Plaintiff testified that she complained about the lap dance remark to Thomas Lucas. According to Plaintiff, she told Thomas Lucas, "I'm upset because Josh asked me to do a lap dance and I really feel offended." Thomas Lucas responded, again according to Plaintiff, "So are you?" Thomas Lucas denies ever discussing the incident with Plaintiff. (Thomas Lucas Dep. at 15–16).

After Mr. Terpstra began as a full-time employee in February 2000, Plaintiff contends that he stared at her during work. (Pl. Dep. at 71–74) Mr. Terpstra denies this contention. (Terpstra Dep. at 14) Plaintiff testified in her deposition that she told her former supervisor, Raymond Lucas, about Mr. Terpstra's unwelcome stares. (Pl. Dep. at 74–77) According to Plaintiff, Raymond Lucas took prompt and effective remedial action. (Pl. Dep. at 75–77) Mr. Terpstra testified in his deposition that he did not recall discussing staring with Raymond Lucas. (Terpstra Dep. at 8) Plaintiff contends that after Raymond Lucas' death, Mr. Terpstra's unwelcome stares resumed. She testified that from August 2000 until her termination, he stared at her "maybe twice a week." (Pl. Dep. at 88) In addition to the stares, Plaintiff asserts that Mr. Terpstra occasionally cocked his head back and said to her, "Hey girl." (Pl. Dep. at 69–71)

D.  **Thomas Lucas**

Thomas Lucas was Plaintiff's supervisor after the death of Raymond Lucas. In addition to the failure to take corrective action after the lap dance incident, Plaintiff alleges two more instances of harassing conduct by Thomas Lucas.

6

First, there is the matter of the casino chip. In early September 2000, Thomas Lucas undeniably gave Plaintiff a one dollar casino chip from Trump Casino in Gary, Indiana. As with the lap dance incident, there are competing stories about the circumstances. Plaintiff testified in her deposition that he brushed against her arm when she was walking, then he said, "Whenever you want to go, call me, I'll take you." (Pl. Dep. at 98)[2] Plaintiff believed from Thomas Lucas' tone of voice, the arm brushing, and his general demeanor that he was offering to pay her for sex. (Pl. Dep. at 97–99) She claimed that she broached the subject with Thomas Lucas again the next day, asking him "So what am I supposed to do with that thing, that chip that you gave me yesterday?" (Pl. Dep. at 104–05) In response, Plaintiff said that Thomas Lucas just grinned. (Pl. Dep. at 105) Thomas Lucas testified that he and Plaintiff were talking about her recent trip to the casino when he gave her the casino chip. (Thomas Lucas Dep. at 21–22) Thomas Lucas denies having touched Plaintiff at all during the conversation. (Thomas Lucas Dep. at 22) He also cannot recall any further conversation with Plaintiff about the incident. (Thomas Lucas Dep. at 22)

Second, Plaintiff points to a note Thomas Lucas left for her as another incident of harassment. Thomas Lucas regularly left notes for Homewood Industries employees about the nature of the work to be done. In late September 2000, he left Plaintiff a note about a customer who was scheduled to pick up an order. The note concluded with the sentence, "Be the tough

---

[2] In a slightly different narrative, Plaintiff testified that Thomas Lucas handed her the chip and she said, "What's that?" He replied, "Take it. Whenever you want to cash it in, I'll take you." (Pl. Dep. at 93) The difference between the two accounts is immaterial.

7

girl that you are."[3]

E. **Discussion**

The Supreme Court has directed the lower courts to review the totality of the circumstances in adjudicating sexual harassment claims, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc. 510 U.S. 17, 23 (1993). The conduct outlined above, resolving all factual disputes in favor of the Plaintiff, is insufficient to qualify as sexual harassment. Most of the discriminatory conduct occurred irregularly. The remarks attributed to Mr. Star and the stares of Mr. Terpstra are the only things that occurred on even a semi-regular basis. Mr. Star's remarks are exceedingly mild. His greetings of Plaintiff clearly demonstrated that he recognized that Plaintiff is a woman, but on no occasion did he mention anything remotely sexual. His utterances would create only the slightest offense. Making all inferences in favor of Plaintiff, Mr. Terpstra's occasional stares could be characterized as ogling. Ogling is part of a process of objectification of women but it is certainly not actionable in the mild form that it presents here. Furthermore, it is clear that neither Mr. Terpstra's stares nor Mr. Star's remarks disrupted Plaintiff's work performance.

Some of Plaintiff's other isolated incidents of harassing conduct are not remotely sexual. Mr. Terpstra's occasional "hey girl" remark and Mr. Lucas' "tough girl" note are both remarks that include a recognition of Plaintiff's sex, but they are not remotely hostile. While Mr.

---

[3]The full text of the note reads: "Sam Ortiz is picking up an order at 8:00 a.m. Monday morning. He is not to take out one item out of the building without giving you a check. $1867.95. Be the tough girl that you are."

8

Mihalik's remark about Plaintiff's legs was sexually suggestive, it, too, was at most a "mere offensive utterance."

The only two incidents that are remotely severe are Mr. Terpstra's request for a lap dance and the casino chip incident. Again making all reasonable inferences in favor of Plaintiff, these two incidents, even with the additional background factors from the incidents discussed above, do not qualify as actionable sexual harrassment. Mr. Terpstra's request for a lap dance was a mere offensive utterance from the mouth of a teenage boy. It does not belong in the workplace, but neither does it constitute a federal offense. Thomas Lucas' gift of a casino chip to the Plaintiff seems unlikely to have been calculated as a request to pay her for sex. Assuming that it was such a request, as the Court must on a motion for summary judgment, its obtuse clumsiness makes it less severe than a more direct or more explicit request would be. Furthermore, it is an isolated incident that is insufficiently severe to be actionable sexual harrassment.

Giving the Plaintiff's evidence its most generous reading, it does not create an atmosphere of hostility that is "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986).[4] Consequently, the Plaintiff cannot sustain her burden on Count I and the Defendant is entitled to summary judgment on her sexual harassment allegation.

## II. Plaintiff's National Origin Discrimination Claim

Count II of Plaintiff's Amended Complaint alleges discrimination based on her Mexican

---

[4]Since the evidence does not establish a claim of sexual harrassment, the Court does not need to reach the question of employer liability. See Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998) ("Because we hold that the incidents alleged by Adusumilli do not constitute harassment, we need not discuss [employer liability].").

national origin. Plaintiff sets forth a claim for discrimination based upon disparate treatment of similarly situated individuals who are not Mexican.

To establish a prima facie case of discrimination based upon disparate treatment, the Plaintiff must show: 1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situtaed employees outside the protected class more favorably. Contreras v. Suncast Corp., 237 F.3d 756, 759 (7th Cir. 2001).

The primary reason that Thomas Lucas gave for Plaintiff's discharge was that she was "slamming product" and it disrupted the production line. " When you slam something down, people look." (Thomas Lucas Dep. at 48) Plaintiff asserts that on one occasion, a white female employee named Doris threw product at another employee. Plaintiff asserts that Homewood's failure to fire Doris for her conduct satisfies her burden.

In order to establish that the employer treated similarly situated employees differently, the plaintiff must also establish that the employer knew about the incident with the similarly situated employee. See Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1366 (7th Cir. 1988) (holding that party responsible for termination must also know about similarly situated employees to sustain liability). Particularly where someone is fired for alleged misconduct, it would be illogical to sustain employer liability for disparate treatment when the employer was unaware of any other misconduct.

Plaintiff admits that the Defendant had no knowledge of the incident with Doris; she admits that the Homewood Industries management first learned of the incident when she filed this lawsuit. As such, she has not established that similarly situated employees were treated

differently. Failure to establish any single element of the prima facie case dooms the Plaintiff's case. See Contreras v. Suncast Corp., 237 F.3d at 760-61 (analyzing only one of two prongs of prima facie case that plaintiff failed to establish before the district court; failure of one is sufficient to uphold the judgment). Although the case does not proceed to the pretext analysis unless the plaintiff establishes a prima facie case, see Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002) ("A plaintiff does not reach the pretext stage unless she first establishes a prima facie case of discrimination."), Plaintiff has offered no evidence that the Defendant's proffered reason for the firing (that she was disrupting the production line) was pretextual. Defendants are clearly entitled to summary judgment on Count II of Plaintiff's Amended Complaint.

## III. Plaintiff's Retaliation Claim

The final count in Plaintiff's Amended Complaint alleges that she was fired in retaliation for her complaints about sexual harassment and her refusal to accompany Thomas Lucas to the casino. To sustain a case of retaliation, a plaintiff must show three things: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action at the hands of her employer; and (3) there was a causal link between the two." Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir. 2002). The failure of Plaintiff's harassment claim is not dispositive of her retaliation claim. As the Seventh Circuit recently declared:

> We have repeatedly held that a plaintiff need not prevail on her Title VII
> discrimination claim or have opposed an action that in fact violated Title VII to
> win a retaliation claim. McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir.1996);
> Alexander v. Gerhardt Enters., Inc., 40 F.3d 187, 195-96 (7th Cir.1994); Dey [v.
> Colt Constr. & Dev. Co.], 28 F.3d [1446]at 1457-58 [(7th Cir. 1994)]. All that is
> required is that 'she reasonably believed in good faith that the practice she
> opposed violated Title VII.' Alexander, 40 F.3d at 195.

Fine, 305 F.3d at 752.

Plaintiff has clearly established that she suffered an adverse employment action. She has also established that she engaged in statutorily protected expression with respect to two incidents. Her complaint about the lap dance incident was protected under the statute.[5] Her ability to choose whether to accept Thomas Lucas' offer regarding the casino chip would also be protected under the statute if Thomas Lucas was offering to pay her for sex. She did not inform her supervisor about any of the other incidents of harassment in her complaint, so they could not afford any cause for retaliation.

Plaintiff has failed to establish any causal relationship between her termination and these two incidents. The lap dance complaint took place in July and the casino chip incident took place in early September. Defendant fired Plaintiff in early November. While the temporal proximity of all these incidents could suggest a retaliatory motive, the evidence offers scant support for that position.

After Raymond Lucas' heart attack in early July, Thomas Lucas assumed the duties of supervising Defendant's employees, including Plaintiff. All of Plaintiff's complaints about Defendant occurred after the change in supervisors. The evidence shows that Plaintiff and Thomas Lucas did not get along well. Thomas Lucas' management was different from his father's, and Plaintiff had a singular distaste for his style of management. Furthermore, the incident that immediately preceded her termination is the most likely reason she was terminated. The incident related to whether Plaintiff would be paid for jury duty. Plaintiff thought she would be paid, but Defendant's policy is that she would not be paid unless she took a vacation day.

---

[5] Defendant disputes that Plaintiff complained about the lap dance remark.

12

This policy dispute occurred on October 31. She was upset about the dispute and it affected her work performance. She was fired on November 3.

In the absence of evidence of a causal link between the protected expression and the adverse employment action, Plaintiff cannot prevail. Defendant is entitled to summary judgment on Count III of Plaintiff's complaint.

## CONCLUSION

For the reasons stated in this opinion, Defendant is entitled to summary judgment on all three counts of Plaintiff's Complaint. Judgment will be entered for the Defendant, and this case is closed.

Enter:

David H. Coar
United States District Judge

Dated: December 17, 2002